1  HUGH ANTHONY LEVINE (CSBN 69857)
   345 Franklin Street
2  San Francisco, CA 94102
   Telephone: (415) 732-6101
3  Facsimile: (415) 255-7264
   Email: halesq@ix.netcom.com
4
5  Attorney for Defendant
6
7
8                       UNITED STATES DISTRICT COURT
9                      NORTHERN DISTRICT OF CALIFORNIA
10                           SAN FRANCISCO DIVISION
11
12 UNITED STATES OF AMERICA,   )   CR 08-0251-MMC
                               )
13          Plaintiff,          )   DEFENDANT'S MOTIONS
                               )   *IN LIMINE*.
14 vs.                         )
                               )   Motions Hearing/Pretrial Conf.
15 FREDERICK LIM JOHNSON,      )
                               )   Date:  July 28, 2009
16          Defendant.          )   Time:  3:00 p.m.
                               )
17 _____ )

18      Defendant submits the within memorandum of points and authorities
19 regarding his Motions *in Limine*, and requests that the Court rule on these
20 motions, to the extent feasible, before opening statements.
21                                    Respectfully submitted,
22                                    _____/s/_____
23                                    HUGH ANTHONY LEVINE
                                      Attorney for Defendant
24
25
26

**Defendant's Motions** *in Limine*                1

**Defendant's Motions *in Limine***

1. **EXCLUDE ANY REFERENCE, DIRECT OR INDIRECT, THAT ANY PERSON HAS BEEN TRIED FOR OR CONVICTED OF ANY OFFENSE RELATED TO THE OFFENSE CONDUCT FOR WHICH DEFENDANT IS ON TRIAL UNLESS (1) THAT PERSON WILL BE A WITNESS IN THIS TRIAL AND (2) THE COURT FINDS THAT SUCH EVIDENCE IS RELEVANT AND ADMISSIBLE.**

The fact that any of Mr. Johnson's alleged co-perpetrators – Richard Duran, Tavaras Blackmon, or Vanessa Short – has pleaded guilty or otherwise been convicted of any offense related to the offense conduct for which Mr. Johnson is on trial is irrelevant, hearsay, and highly prejudicial inasmuch as it gives rise to both the implication and the inference that if any of them is guilty he probably is guilty as well.

Only if any of these alleged co-perpetrators becomes a witness at trial could there be any conceivable relevance in the fact of his/her/their conviction, and that relevance would be limited to the issue of credibility as a witness rather than the issue of the defendant's guilt *vel non*. *See* FRE 402, 403, 803(22).

Any implication by the government in the jury's presence that Mr. Johnson is guilty because someone else who allegedly acted in concert with him has pleaded guilty will be highly improper and, if it occurs, defendant moves for a mistrial on the grounds stated. *See*, *e.g.*, **United States v. Dworken**, 855 F.2d 12, 31 (1st Cir. 1988) (prosecutor's reference to codefendant's guilty plea by saying defendant "as like all of the other codefendants in this case" was improper); **United States v. Mitchell**, 1 F.3d 235, 240 (4th Cir. 1993) (prosecutor's statement that defendant's brother had been convicted for participating in the same conspiracy was improper because statement encouraged jury to convict defendant for impermissible reason).

2. **EXCLUDE ANY REFERENCE TO MR. JOHNSON'S PREVIOUS RELATED TRIAL FOR FELON-IN-POSSESSION.**

Mr. Johnson was arrested on May 30, 2007 by federal agents who were surveilling him as a suspect in the robberies charged in the instant indictment, and a gun allegedly was found in his possession. For reasons which have yet to be explained the government chose to try him separately on that felon-in-possession charge, rather than include it in the instant indictment. In the government's proposed *voir dire* questions for that trial (CR07-0371-MJJ, document 29, page 2, ¶5) reference was made to Richard Duran as a potential government witness, and Mr. Duran likewise is a potential government witness in the trial of this case.

It would be irrelevant, as well as highly prejudicial, for any reference to that proceeding to be made in the jury's presence and, if it occurs, defendant moves for a mistrial on the grounds stated. *See* FRE 402, 403; **United States v. Jackson**, 339 F.3d 349, 357 (5th Cir. 2003) (prosecutor's indirect reference to defendant's prior conviction was improper because its "probative value was substantially outweighed by its undue prejudice"); **United States v. Wesley**, 417 F.3d 612, 622 (reversing conviction due to witness' reference to defendant's prior incarceration).

3. **EXCLUDE ANY EVIDENCE REGARDING ANY STATEMENTS MADE BY MR. JOHNSON DURING HIS 2003 PROFFER SESSION IN ANOTHER CASE UNLESS (1) SUCH STATEMENTS ARE OFFERED TO IMPEACH HIS TESTIMONY IN THIS TRIAL AND (2) THE COURT HAS RULED THAT THEY ARE ADMISSIBLE FOR THE EVIDENTIARY PURPOSE FOR WHICH THEY ARE OFFERED.**

On May 7, 2003, while Mr. Johnson was charged with a number of bank robberies and conspiracy to commit bank robberies (CR03-0141-CRB), he was interviewed in the presence of his attorney, George Beckwith, and the prosecutor, AUSA Tony Brass, by FBI Special Agent Derek Price. It appears that this interview was a proffer session sometimes denominated a "queen for a day" session, during which Mr. Johnson implicated himself and others in

**Defendant's Motions** *in Limine*               3

several bank robberies.  Ultimately Mr. Johnson pleaded guilty in that case.

At the outset of Mr. Johnson's subsequent trial on the felon-in-possession charge referred to in paragraph 2, *ante*, the government sought to introduce his statements made in that proffer session.  During a hearing on motions *in limine* Judge Jenkins ruled that the government could not offer in evidence testimony about those other robberies or about defendant's statements regarding them.  Judge Jenkins' *ratio decidendi* in so ruling dealt with relevance and prejudice rather than whether Mr. Johnson's statements were inadmissible under FRE 410 as statements made in the course of plea discussions, which question apparently went undiscussed by the parties or the court.

Here, the government in its Motions in Limine makes several references to these 2003 statements and seeks to introduce them under Rule 404(b) (Govt's Motion in Limine, part 4, p. 10 *et seq*.).  Referring to these statements merely as "an interview with FBI agents" (Govt's Motion, p. 10, line 21), the government is silent about the fact that these statements were made in a proffer session during which the government promised the defendant that his statements would not be used against him unless he testified contrary to them at trial, silent also about the fact that the statements are inadmissible under FRE 410, and silent as well about the fact that Judge Jenkins excluded them as evidence in Mr. Johnson's related felon-in-possession trial.

Mr. Johnson here contends that his statements during that proffer session are inadmissible in this case under FRE 410 regardless of the fact that he later pleaded guilty in that case, as well as inadmissible under FRE 403 and 404.  In the event that any reference to these statements is made in the jury's presence, defendant moves for a mistrial on the grounds stated.

4. **EXCLUDE ANY OUT-OF-COURT STATEMENT PURPORTEDLY MADE BY ANY CHARGED OR UNCHARGED ALLEGED COCONSPIRATOR WITHOUT THE REQUISITE EVIDENTIARY**

**Defendant's Motions** *in Limine*                4

**FOUNDATION OF THE EXISTENCE OF SAID CONSPIRACY, DEFENDANT JOHNSON'S MEMBERSHIP IN IT, AND THAT THE STATEMENT WAS MADE IN FURTHERANCE OF SUCH CONSPIRACY.**

*See* FRE 801(d)(2)(E); ***Bourjaily v. United States***, 483 U.S. 171, 182-83 (1987).

5. **EXCLUDE ANY TESTIMONY BY OR ABOUT ANY COOPERATING WITNESS THAT HIS/HER PLEA AGREEMENT IS CONDITIONAL UPON TRUTHFUL TESTIMONY.**

***United States v. Rudberg***, 122 F.3d 1199 (9th Cir. 1997), and cases therein discussed.

6. **EXCLUDE ANY STATEMENTS ALLEGEDLY MADE BY MR. JOHNSON TO ANY LAW ENFORCEMENT OFFICER UNLESS AND UNTIL THE COURT FINDS, AFTER AN EVIDENTIARY HEARING, THAT SUCH STATEMENTS WERE MADE, WERE MADE VOLUNTARILY AND IN COMPLIANCE WITH THE DICTATES OF *MIRANDA*, AND ARE OTHERWISE ADMISSIBLE.**

FRE 104; ***Miranda v. Arizona***, 384 U.S. 436, 444 (1966).

7. **EXCLUDE ANY OPINION, WHETHER OFFERED AS LAY OPINION OR EXPERT OPINION, THAT MR. JOHNSON WAS "CASING" BANKS OR "PREPARING TO ROB" A BANK OR BANKS, OR ANY SIMILAR OPINIONS/CONCLUSIONS ABOUT HIS MENTAL STATE.**

Defendant contends that there is no such science or field of expertise which would enable a law enforcement officer to conclude with any more accuracy than an average juror what someone's mental state was while in the vicinity of a bank or banks.  FRE 401, 403, 701, 702; ***Kumho Tire Company, Ltd. v. Carmichael***, 526 U.S. 137, 152 (1999)[the **Daubert** standard for determining reliability of testimony stating scientific conclusions may apply to both scientists and non-scientific experts]; ***Daubert v. Merrell Dow Pharm., Inc.***, 509 U.S. 579 (1993).

In fact, in the guilt phase of most federal as well as California criminal trials, including those involving insanity or other mental state defenses, even forensic psychiatrists are precluded from testifying whether,

**Defendant's Motions** *in Limine*                5

in their opinion, the defendant had a certain mental state at the time of the alleged offense; FRE 704(b); California Penal Code §29.

During defendant's felon-in-possession trial before Judge Jenkins which is referred to in paragraph 2, *ante*, FBI Special Agent Michael Gurney was permitted to opine, based on his observations during surveillance, that the suspects were "casing a bank" and "[i]n my opinion, they were preparing to rob the bank" (Trial Transcript, CR07-0371-MJJ, pp. 68), and FBI Special Agent David Walden also opined, on direct examination, that on the preceding day during surveillance "[i]t was clear to me that he was casing the bank..." (*id.*, at p. 86). No appropriate objection to this testimony was made and Judge Jenkins was not called upon to decide the issue raised herein.

Regardless of the extent of a witness' background, training and experience with respect to surveillance or bank robbery, this sort of testimony is simply thinly-disguised speculation by a law enforcement officer about the operation of another person's mind. Witnesses describing their observations during such surveillance should be limited to relating what they saw, not how they interpreted those observations; it is for the jurors to draw their own conclusions. "If the jury already has all the information upon which the witness's opinion is based, the opinion is not admissible." **United States v. Henke**, 222 F.3d 633, 640 (9th Cir. 2000) (holding that lay opinion on issue of defendant's knowledge was inadmissible).

Merely characterizing the proffered opinion as "expert" opinion rather than "lay" opinion, thus bringing the issue within FRE 702 rather than FRE 701, does not render it admissible if the opinion lies within the comprehension of the average juror. **United States v. Torres-Galindo**, 206 F.3d 136, 149 (1st Cir. 2000) (expert testimony improperly admitted because jury probably knew that persons accused of wrongdoing often deny guilt before confessing); **United States v. Seschillie**, 310 F.3d 1208, 1212 (9th Cir. 2002) (trial court properly excluded expert opinion testimony concerning whether

**Defendant's Motions *in Limine***        6

shootings were accidental, because jury was capable of making that determination on common sense basis without expert help).

Throughout the government's Motions in Limine are sprinkled various permutations of such references to the mental state of the defendant while in the vicinity of banks, including: "scouted, or 'cased'" (p. 2, line 12), "scouting" (p. 2, line 14), "patrolling the parking lot at multiple banks" (p. 7, line 8), "scope multiple banks" (p. 8, line 17), "scouting banks" (p. 9, line 5), "casing multiple banks" (p. 9, lines 19-20), "carefully observed banks before choosing which ones to rob" (p. 10, line 6), each of which contains an opinion/conclusion about the defendant's mental state and would be incompetent and prejudicial if offered as evidence, for the reasons stated.

In the event that any witness renders any such opinion about casing banks or preparing to rob a bank, or any similar expression of opinion about defendant's mental state, defendant moves for a mistrial on the grounds stated.

8. **EXCLUDE ANY EVIDENCE THAT MR. JOHNSON AND HIS ALLEGED COCONSPIRATOR RICHARD DURAN ONCE WERE CELLMATES IN FEDERAL PRISON, OR THAT MR. JOHNSON AND HIS ALLEGED COCONSPIRATOR TAVARAS BLACKMON ONCE WERE ROOMMATES IN A FEDERAL HALFWAY HOUSE.**

FRE 403, 404; *United States v. Wesley*, 417 F.3d 612, 622 (reversing conviction due to witness' reference to defendant's prior incarceration).

9. **EXCLUDE ANY REFERENCE BY ANY WITNESS TO THE FACT THAT BULLETS ALLEGEDLY FOUND IN A PISTOL ON THE DAY OF DEFENDANT'S ARREST WERE "HOLLOW-POINT" BULLETS AND EXCLUDE THE BULLETS THEMSELVES.**

In defendant's felon-in-possession trial Judge Jenkins granted a defense motion *in limine* to exclude reference to "hollow-point" ammunition as being irrelevant and prejudicial. Despite this ruling, FBI Special Agent Michael Gurney managed to blurt out a reference to the bullets as "silver-

**Defendant's Motions *in Limine***         7

tipped hollow-point" before defense counsel's objection and motion to strike were upheld (Trial Transcript, CR07-0371-MJJ, pp. 32-33). Judge Jenkins later chastised the prosecutor for this violation of the *in limine* ruling (*id.*, pp. 38-39).

Testimony about the nature of the bullets and the bullets themselves would be no more relevant and no less prejudicial in this trial, and should be excluded pursuant to FRE 402, 403.

10. **PRECLUDE THE GOVERNMENT FROM CALLING ANY WITNESS IN THE JURY'S PRESENCE, INCLUDING BUT NOT LIMITED TO TAVARAS BLACKMON, WHO IT REASONABLY KNOWS OR SHOULD KNOW WILL ASSERT HIS/HER PRIVILEGE AGAINST SELF-INCRIMINATION OR OTHERWISE REFUSE TO TESTIFY.**

*See*, *e.g.*, ***Douglas v. Alabama***, 380 U.S. 415, 420 (1965) (prosecutor's questioning of codefendant required reversal because it lent "critical weight" to State's case; *cf.*, ***Namet v. United States***, 373 U.S. 179, 185-86 (1963) (error held harmless because it did not lend critical weight to government's case).

11. **WITH REGARD TO ANY COOPERATING WITNESS, REQUIRE THE GOVERNMENT TO ESTABLISH BY AGREED STATEMENT OR EVIDENCE (1) THE MAXIMUM SENTENCE TO WHICH THE WITNESS WOULD BE EXPOSED ABSENT COOPERATION FOR ANY OFFENSES WITH WHICH THE WITNESS HAS BEEN OR COULD BE CHARGED, INCLUDING UNCHARGED OFFENSES WHICH THE WITNESS HAS ADMITTED COMMITTING OR WHICH THE GOVERNMENT KNOWS OR REASONABLY SHOULD KNOW THAT THE WITNESS HAS COMMITTED.**

At trial it is likely the government will present the testimony of cooperating codefendants, including Richard Duran and Vanessa Short. An obvious and common defense tactic in attempting to damage the credibility of such a witness is to explore the terms of his/her plea agreement with the government, particularly their maximum sentence exposure had they not entered into a plea agreement. Often cooperating witnesses profess not to know their full sentence exposure and when cross-examined as to whether they were

**Defendant's Motions *in Limine*** 8

informed about it by their counsel the prosecution interposes an objection that such questioning invades the witness' attorney-client privilege, which it may.  The upshot of such a testimonial scenario is that the defendant effectively may be stymied in getting this critical evidence before the jury.

Such information plainly constitutes ***Brady/Giglio*** material which the prosecution is required to disclose to the defense precisely because it does have a tendency to undermine a witness' credibility.  We contend that merely providing the information to the defense is ineffectual in satisfying the prosecution's constitutional duty if the defense is precluded by the witness' testimony or the government objection from getting it before the jury.

One way to rectify this discrepancy would be for the Court to take judicial notice of the maximum penalty for any offense with which the witness has been or could be charged, including uncharged offenses which the witness has admitted committing or which the government knows or reasonably should know that the witness has committed.  Manifestly such statutory provisions are not subject to reasonable dispute within the meaning of FRE 201.

Another way would be by a stipulation between the parties.

The relief defendant seeks here grounds in the Compulsory Process Clause of the Sixth Amendment as well as the Due Process Clause of the Fifth Amendment which underpins the ***Brady/Giglio*** rules; *cf.*, ***United States v. Filippi***, 918 F.2d 244, 247 (lst Cir. 1990) (compulsory process violated by government's failure to make foreign national's attendance at trial possible by requesting special interest parole from INS because inaction directly caused loss of defendant's only material witness).

12. **EXCLUDE ANY EVIDENCE THE GOVERNMENT ADDUCED IN THE TRIAL OF MR. JOHNSON IN CR07-0371-MJJ.**

Mr. Johnson was arrested on May 30, 2007 by federal agents who were surveilling him as a suspect in the robberies charged in the instant indictment, and a gun allegedly was found in his possession.  For reasons

**Defendant's Motions** *in Limine*                             9

which have yet to be explained the government chose to try him separately on that felon-in-possession charge (CR07-0371-MJJ), rather than include it in the instant indictment. He was found guilty, sentenced to 235 months of imprisonment, and his appeal from the conviction was affirmed by the Ninth Circuit in an unpublished opinion filed on May 19, 2009 (No. 08-10057).

The government adduced considerable testimonial and demon-strative evidence in the felon-in-possession trial which, based upon the government's Motions in Limine it will seek to reprise in this trial; see Govt's Motions numbers 2 and 3). The defense contends that the government is barred from doing so by the doctrine of collateral estoppel, which is a component of the Fifth Amendment's prohibition against double jeopardy. United States Constitution, Amendment V (double jeopardy and due process clauses); **Ashe v. Swenson**, 397 U.S. 436, 444-45 (1970).

13. **REQUIRE THE GOVERNMENT TO PROVIDE TO THE DEFENSE ANY INFORMATION IT OBTAINS ON ANY PROSPECTIVE OR SEATED JUROR OUT-SIDE OF *VOIR DIRE* WHICH HAS NOT BEEN MADE KNOWN TO THE DEFENSE.**

*See, e.g.*, **People v. Pride**, 3 Cal.4th 195 (1992); **People v. Murtishaw**, 29 Cal.3d 733 (1981).

Dated:  June 29, 2009

                                        Respectfully submitted,

                                        _____/s/_____

                                        HUGH ANTHONY LEVINE
                                        Attorney for Defendant